IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01352-PSF-PAC
(Consolidated with 05-cv-01625-WYD-BNB)

HILARY STRECKENBACH; and
OMAR MARTINEZ,

       Plaintiff,

v.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR SALES U.S.A., INC.;
BRIDGESTONE/FIRESTONE, INC., an Ohio corporation; and
BRIDGESTONE CORPORATION, a foreign corporation,

       Defendants.

---

WESTERN AGRICULTURAL INSURANCE COMPANY, a foreign corporation as
Subrogees of Omar Martinez and Hillary Streckenbach,

       Plaintiff,

v.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR SALES US. , INC.;
TAKATA CORPORATION; a foreign corporation believed to be
headquartered in Japan;
TAKATA, INC., a Delaware corporation;
TK HOLDINGS, a foreign corporation;
TK HOLDINGS, INC. , a Delaware corporation;
TAKATA RESTRAINT SYSTEMS, INC. , a Delaware corporation;
TAKATA NORTH AMERICAN, INC., a foreign corporation;
TAKATA SEATBELTS, INC. , a foreign corporation;
TAKATA SEAT BELTS, INC., a Delaware corporation;
AUTOMOTIVE SYSTEMS LABORATORY, INC. , a Delaware corporation;
TI HOLDINGS, INC. , a foreign corporation;
IRVIN AUTOMOTIVE PRODUCTS, INC., a foreign corporation;
IRVIN INDUSTRIES, INC., a foreign corporation;
IRVIN AUTOMOTIVE INDUSTRIES, INC. , a foreign corporation;

HALLE & STIEGLITZ, INC. , a foreign corporation;
HALLE INDUSTRIAL GROUP, INC. , a foreign corporation;
HALLE INDUSTRIES, INC. , a foreign corporation;
IRVIN INDUSTRIES, INC., N.Y., a foreign corporation;
IRVIN INDUSTRIES INC., MICHIGAN, a foreign corporation;
TOKAI RIKA CO., LTD., a foreign corporation;
BRIDGESTONE/FIRESTONE, INC. , an Ohio corporation; and
BRIDGESTONE CORPORATION, a foreign corporation,

     Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on Defendant Bridgestone Corporation's ("Bridgestone's") two Motions to Dismiss for Lack of Personal Jurisdiction (Dkts. ## 22 and 62), filed on September 20, 2005, and January 19, 2006, respectively. Bridgestone's first motion seeks dismissal of Plaintiffs Hilary Streckenbach's and Omar Martinez's claims against it, and the second seeks dismissal of those claims asserted against it by Plaintiff Western Agricultural Insurance Company ("Western"), which is a subrogee of Ms. Streckenbach and Mr. Martinez.  Bridgestone brings both motions pursuant to F.R.Civ.P. 12(b)(2), asserting that the Court lacks personal jurisdiction over it because it is a Japanese corporation with its principal place of business in Japan, and has no contacts with Colorado.  Both motions are fully briefed and ripe for disposition.  The Court determines that oral argument will not be of material assistance.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case was originally filed in Denver District Court and was timely removed to this Court on July 19, 2005 based on diversity jurisdiction.  The suit arises out of an

2

automobile rollover accident which occurred on June 15, 2003, in Broomfield County, Colorado. Compl. at 2, ¶ 1.[1] Ms. Streckenbach and Mr. Martinez, residents of Longmont, Colorado, seek to recover damages for injuries sustained in the accident from multiple defendants involved in the manufacture and design of the automobile, the seatbelt system[2] and the tires. *Id.* at 5, ¶ 7; 7, ¶ 16; 10, ¶ 46; 13 ¶ 68. Plaintiffs bring claims for relief against Bridgestone and its second-tier subsidiary Bridgestone/Firestone North American Tire L.L.C. ("Firestone") Firestone for strict liability, negligence, and breach of warranty with regard to the design and manufacture of the tires. *Id.* at 13-16, ¶¶ 67-81. Specifically, plaintiffs allege that one of the tires, a Bridgestone Desert Dueler steel belted radial tire manufactured by Bridgestone in Japan, failed catastrophically, causing the rollover accident and the resulting serious bodily injury to plaintiffs. *Id.* at 5, ¶ 6; Pls.' Resp. at 3.

Bridgestone is a Japanese corporation headquartered in Tokyo. Mot. Dismiss at 2. It is the ultimate parent corporation of Firestone, an Ohio corporation with its principal offices in Nashville, Tennessee. Compl. at 4, ¶ 3(v); *see also* Br. Supp. Mot. Dismiss at 3, n.1 (describing the corporate lineage as between Bridgestone and Firestone).

---

[1]   All citations are to the pleadings and responses filed by Plaintiffs Streckenbach and Martinez, as opposed to those filed by Plaintiff Western, or are to the first motion filed by Bridgestone, as opposed to its second motion, unless otherwise noted. Western has adopted Streckenbach and Martinez's opposition, and supplies further argument in support of jurisdiction. *See* Western's Resp. (Dkt. # 67) at 2-3.

[2]   The "seatbelt defendants" were voluntarily dismissed by Ms. Streckenbach and Mr. Martinez on November 29, 2005 (Dkt. # 54).

## II.  MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Bridgestone seeks dismissal of the claims against it brought by

Ms. Streckenbach, Mr. Martinez and Western pursuant to F.R.Civ.P. 12(b)(2) for lack of

personal jurisdiction.  Bridgestone claims that this Court lacks both specific and general

jurisdiction, and that the contacts of its subsidiary, Firestone, cannot be imputed to it for

jurisdictional purposes.

Bridgestone asserts that it does not conduct business in Colorado and has

no contacts with Colorado.  Br. Supp. Mot. Dismiss at 2.  It contends that it designs,

manufactures and sells tires only in Japan in transactions governed by Japanese law.

*Id.*  Bridgestone tires that are manufactured in Japan and sold in the United States

are purchased from Bridgestone in Japan, and then resold by parties other than

Bridgestone.  *Id.*  Bridgestone claims that after it sells its tires in Japan it does not

control where or to whom they are sold.  *Id.*

Plaintiffs allege that Bridgestone does business in Colorado.  Compl. at 4,

¶ 3(w).  They contend that Bridgestone's "continuous and systematic" contacts in

Colorado are sufficient to confer jurisdiction on this Court over Bridgestone.  Pls.' Resp.

at 9.  Additionally, they claim that Bridgestone operates Firestone as its agent in the

United States and therefore Firestone's contacts with Colorado may be imputed to

Bridgestone for jurisdictional purposes.  *Id.* at 16-21.

### A.  Applicable Legal Standards

Once a court's personal jurisdiction over a defendant has been challenged, "the

plaintiff has the burden of proving jurisdiction exists."  *Wenz v. Memery Crystal*, 55 F.3d

4

1503, 1505 (10th Cir. 1995).  When a district court rules on a F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based on affidavits and other written materials, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

In deciding such a motion to dismiss, "[t]he allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).  When the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.*; *see also Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Personal jurisdiction over a nonresident defendant, such as Bridgestone, in a diversity suit is determined by the law of the forum state.  *Wenz*, 55 F.3d at 1506 (citing F.R.Civ.P. 4(e)).  Colorado's long-arm statute, C.R.S. § 13-1-124(1), "extend[s] the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions."  *Scheuer v. District Court*, 684 P.2d 249,

250 (Colo. 1984).  Colorado courts employ a two-pronged analysis in making jurisdictional determinations.  *Wenz*, 55 F.3d at 1506-07.  First, courts determine whether the exercise of jurisdiction is sanctioned by Colorado's long-arm statute, and second, whether such exercise comports with due process under the United States Constitution.  *Id.* at 1507.

### B.  Analysis

#### 1.  Colorado's Long-Arm Statute

As relevant here, Colorado's long-arm statute sanctions Colorado courts to exercise jurisdiction over out-of-state defendants who commit "a tortious act within this state."  C.R.S. § 13-1-124(1)(b).  This provision "implies the total act embodying both the cause and its effect."  *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) quoting *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 524 (Colo. 1989).  As such, Colorado's long-arm statute reaches both (1) tortious conduct occurring in Colorado, and (2) tortious conduct elsewhere causing injury in Colorado.  *See Wenz*, 55 F.3d at 1507.

Ms. Streckenbach and Mr. Martinez allege that they were injured in Broomfield County, Colorado due to a defective tire designed and manufactured by Bridgestone, a tort claim recognized in Colorado.  *See e.g. Le Manufacture Francaise des Pneumatiques Michelin v. District Court*, 620 P.2d 1040, 1044 (Colo. 1980) [hereinafter *Michelin*] (under similar circumstances, recognizing tort committed in Colorado by foreign corporation that manufactured allegedly defective tire abroad); *Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1078 (Colo. 1982) (recognizing tort of negligent

6

brake repair occurring outside Colorado falling within first prong of Colorado's long-arm statute).  Thus, the exercise of jurisdiction here is authorized by Colorado's long-arm statute, C.R.S. § 13-1-124(1)(b).

### 2.  Due Process

In addition to satisfying Colorado's long-arm statute, plaintiffs must also fulfill the constitutional requirement found in the Due Process Clause of the Fourteenth Amendment to successfully establish personal jurisdiction over Bridgestone.  *See Wenz*, 55 F.3d at 1507.  Personal jurisdiction under the Due Process Clause may be either specific or general.  *See e.g. Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999).  General jurisdiction is found when a defendant has "continuous and systematic activity in the forum state."  *Id*.  Specific jurisdiction, on the other hand, "is predicated upon a defendant's minimum contacts with the forum which give rise to the cause of action."  *Id*. at 1190.

Ms. Streckenbach and Mr. Martinez contend that the Court has both specific and general jurisdiction over Bridgestone.  Pls.' Resp. at 22.  They also claim that even if the Court does not have jurisdiction over Bridgestone due to its own contacts with Colorado, Firestone's contacts may be imputed to Bridgestone because Bridgestone operates Firestone as its agent in Colorado.  *Id*. at 27-29.

Under specific jurisdiction, the "touchstone inquiry is whether the defendant has purposefully directed its activities toward the forum jurisdiction and whether the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."  *Wise*, 89 F. Supp. 2d at 1190 (internal quotation marks and

brackets omitted).  Plaintiffs rely on a stream of commerce theory to establish specific

jurisdiction over Bridgestone.  Pls.' Resp. at 24.

The Supreme Court has determined that "placement of a product into the stream

of commerce, without more, is not an act of the defendant purposefully directed toward

the forum State." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987).

However, where the defendant should "reasonably anticipate being haled into court" in

the forum, jurisdiction is appropriate. *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297 (1980).  That occurs when the alleged tortfeasor from outside the state

"delivers its products into the stream of commerce with the expectation that they will be

purchased by consumers in the forum State." *Id.* at 298.  Such purposeful availment

"of the privilege of conducting activities within the forum State" indicates that the

defendant "has clear notice that it is subject to suit there, and can act to alleviate the

risk of burdensome litigation by procuring insurance, passing the expected costs on

to customers, or, if the risks are too great, severing its connection with the State."

*Id.* at 297.

Additionally, specific jurisdiction is only appropriate where the "litigation results

from alleged injuries that arise out of or relate to" the defendant's activities directed at

residents of the forum. *Burger King*, 471 U.S. at 472 (internal quotation marks omitted).

Moreover, even if a plaintiff shows that a defendant has purposefully availed itself of

the laws and protections of the forum state, the court must still "consider whether the

exercise of personal jurisdiction over the defendant offends 'traditional notions of fair

play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113).

Thus, this Court must make three determinations in deciding whether specific jurisdiction may be properly exercised over Bridgestone: 1) did Bridgestone place its tires into the stream of commerce with the expectation that they would be purchased by consumers in Colorado, thereby purposefully availing itself of the privilege of conducting activities in Colorado; 2) does the controversy arise out of Bridgestone's activity directed toward consumers in Colorado; and 3) does the exercise of jurisdiction comport with traditional notions of fair play and substantial justice.

### a.  Purposeful Availment

Despite Bridgestone's claims that it has absolutely no contacts with the United States or Colorado, it is difficult to characterize it as merely a foreign manufacturer that blithely makes tires in a foreign land, and that it is unaware or indifferent to where the tires ultimately end up.  This is not an isolated case where a defendant merely has *awareness* that the stream of commerce "may or will sweep the product into the forum state."  *Asahi*, 480 U.S. at 112.  Rather, plaintiffs introduce evidence indicating that Bridgestone not only knows but intends, through ongoing systematic activities, its tires to be sold to consumers in the United States, including in Colorado.

Plaintiffs point to documents reflecting Bridgestone's proclamation that it is the "true industry leader in the Americas," and that it is this continent's second largest tire supplier, with 20 percent market share in North America.  Bridgestone Annual Report 1999: Year in Review: The Americas, part of Ex. 9 to Pls.' Resp. at 5, 6.  Bridgestone

also describes its "goal of being No. 1 or at least a strong No. 2 in every large market." *Id.* at 6.  Its annual report from 1998 indicates that its "sales growth in North America outpaced even the strong growth in North American demand.  It reflected the success of our multibrand strategy."  Bridgestone Annual Report 1998: "Sell," attached as Ex. 10 to Pls.' Resp at 9.  This report also described sales of $7.5 billion in the Americas, accounting for 43.8 percent of Bridgestone's consolidated net sales and 31.1 percent of its total operating profit.  *Id.*  The 1999 report indicates $7.6 billion in sales in the Americas, and discusses "promot[ing] our tires through diverse channels" in North America.  Bridgestone Annual Report 1999 at 6.  Further, plaintiffs allege and defendants do not dispute that  "Bridgestone had nine (9) tires [sic] plants, thirteen (13) non-tire plants and one technical center located in the United States" as of the year 2000.  Pls.' Resp. at 14.

The annual report also states with respect to its North American passenger tire business, of which three-fifths are replacement tires and two-fifths original equipment tires: "In the replacement market, we promote our tires through diverse channels, including 1,550 company-owned stores, our Family Channel network of some 13,000 independent dealers, and supply arrangements with national mass merchandisers. In original equipment tires, our North American business includes close working relationships with the leading automakers . . . ." *Id.* at 6.

This information is not consistent with total separation from and indifferent to the United States market by Bridgestone.  That its tires are purchased by consumers in the

United States cannot by described as a random or fortuitous event.[3]  Plaintiffs'
evidence shows that Bridgestone has developed strategies for promotion and sales in
the United States and that it has a stated goal of being the top provider of tires in every
large market.  *See Asahi*, 480 U.S. at 112 ("Additional conduct of the defendant may
indicate an intent or purpose to serve the market in the forum State, for example . . .
advertising in the forum State . . . or marketing the product through a distributor who
has agreed to serve as the sales agent in the forum State.")  It is difficult to imagine that
Bridgestone intends to achieve its goal of dominating the American tire market by
simply placing its tires into the stream of commerce and yet is unconcerned with the
marketing and distribution of its tires here.  Just as Captain Renault in "Casablanca"
(Warner Bros. 1942) should not have been "shocked, shocked to find that gambling is
going on" at Rick's Café as he was handed his winnings, neither should Bridgestone be
surprised that a steady portion of its annual sales and profits stem from Bridgestone
tires that find their way onto Colorado's roads.  Thus, Bridgestone could reasonably
expect to be haled into court in this country when one of its allegedly defective tires is
claimed to have caused an accident in this country.

    Plaintiffs have demonstrated facts showing that Bridgestone expects and desires
its tires to be purchased by American consumers, thereby purposefully availing itself
of the laws of this country and this district and providing the something "more"
contemplated by the Supreme Court.  *See Asahi*, 480 U.S. at 112.  However, it is less

---

    [3] Plaintiff Western states without dispute that Bridgestone's tires "are labeled in
English and bear United States Department of Transportation markings to allow sale in the
United States."  Western's Resp. at 4.

clear whether Bridgestone has purposefully availed itself of the laws of Colorado specifically.

By placing its tires in the stream of commerce with the intention that they will be sold throughout the United States, and with the further intention that their tires will be the leading tires purchased in the United States, it may be inferred that Bridgestone intends its tires to reach the market in each of the states (particularly those states that include a "large market," as the Denver, Colorado area presumably is). A federal district court reached a similar conclusion in *Tungate v. Bridgestone Corp.*, 2002 WL 31741484 (S.D. Ind., Nov. 1, 2002). Apparently relying on similar facts in Bridgestone's annual reports, the court determined that "Bridgestone foresaw and intended that the model of tire would be distributed across the United States to American consumers, including those in Indiana, for the benefit of Bridgestone. That intended activity is sufficient to support jurisdiction in Indiana." *Id.* at *4.

The Colorado Supreme Court has so held as well. In *Michelin*, plaintiffs brought suit against a foreign tire manufacturer that made and sold tires only in France. 620 P.2d at 1042. The defendant had no manufacturing facilities in the United States, owned no property here, appointed no agent for service of process, maintained no bank account or telephone number, and conducted no advertising. *Id.* at 1043. It did, however, place codes on each tire as required by the United States Department of Transportation, indicating compliance with United States standards. *Id.* The court inferred from this fact that the defendant "purposely avail[ed] itself of the Colorado market by placing its products in the stream of commerce with the foreseeable result

12

that they may be sold anywhere in the United States, including Colorado." *Id.* at 1046. Such a determination need not merely be inferred here, where evidence shows that Bridgestone specifically stated its intention to see its tires sold in the United States without limitation.

Bridgestone notes that an Alabama Supreme Court decision reached a contrary conclusion in *Ex Parte Alloy Wheels Int'l, Ltd.*, 882 So. 2d 819 (Ala. 2003). In holding that the defendant did not have sufficient minimum contacts, the Alabama Supreme Court found that presence of DOT markings on the tires in question did not necessarily confer jurisdiction over a foreign corporation in Alabama, even if the markings represented an intent to serve the American market. *Id.* at 827. *See also Asahi*, 480 U.S. at 113 (no personal jurisdiction in California where "there is no evidence that Asahi designed its product in anticipation of sales in California").

Here, however, the Court is satisfied that plaintiffs have presented a prima facie factual basis for finding that unlike Asahi or Alloy Wheels, Bridgestone did design its tires in anticipation of sales in Colorado, as part of its bid to become the top seller in every large market in America.[4] Bridgestone certainly had more than "awareness that

---

[4] Bridgestone sells its product directly to a distributor and its wholly-owned subsidiary, Bridgestone/Firestone, who then sells the tires in all fifty states, including Colorado. Alloy Wheels at the time sold its wheels only in the United Kingdom to original equipment manufacturers such as Land Rover, the unaffiliated manufacturer of the car involved in the accident which gave rise to the case. Never before that case did Alloy Wheels "have any contact with the State of Alabama," including marketing its wheels through an Alabama distributor. *Alloy Wheels*, 882 So. 2d at 825. It was only Land Rover's purposeful conduct that resulted in an Alloy Wheels product appearing in Alabama. No evidence suggests that Alloy Wheels sought market share in the United States or intended its wheels sold in large American markets, as Bridgestone apparently did.

the stream of commerce may or will sweep the product into the forum State." *Id.* at 112; *see also Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983), *cert. denied sub nom.*, 465 U.S. 1024 (1984) (finding that a "critical fact" was whether defendants were aware of the distribution system that moved product along a stream of commerce destined for retail sale throughout United States; even though defendants did not control or create distribution system, their knowledge of it was sufficient to "subject [them] to suit in any forum within that market where their product caused injury") (cited favorably in this district in *Pegasus Helicopters, Inc. v. General Motors Corp.*, 954 F. Supp. 218, 220 (D. Colo. 1997)); *Buckeye Boiler Co. v. Superior Court*, 71 Cal. 2d 893, 80 Cal. Rptr. 113, 458 P.2d 57, 64 (Cal. 1969) ("If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.") (cited favorably by the Tenth Circuit in *Fidelity and Cas. Co. of N.Y. v. Philadelphia Resins Corp.*, 766 F.2d 440, 445 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986)).

### b.  "Arise out of" Contacts

In order for this Court to exercise specific jurisdiction over Bridgestone on a stream of commerce theory, the underlying controversy (here, the automobile accident) must arise out of Bridgestone's purposeful availment contacts with Colorado, described above. *See Burger King*, 471 U.S. at 472.  Bridgestone argues that it has no contacts with Colorado, and thus the controversy cannot arise out of nonexistent contacts. *See* Def.'s Mot. to Dismiss Br. at 5.

14

However, the Court has found that Bridgestone does have sufficient contacts with Colorado by placing its tires in the stream of commerce with the expectation that they would be purchased by Colorado consumers or travel on Colorado roads in large numbers.  The automobile accident allegedly occurred due to a defect in such a tire that was in fact used by a consumer in Colorado.  It is clear that the "litigation results from alleged injuries that arise out of or relate to" Bridgestone's activities directed at this forum.  *Burger King*, 471 U.S. at 472 (internal quotation marks omitted).

### c.  Fair Play and Substantial Justice

Once a plaintiff has made a prima facie showing of sufficient minimum contacts to support jurisdiction, a court must then consider whether the exercise of personal jurisdiction "offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113).  Five factors are relevant to this inquiry: 1) the burden on the out-of-state defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental social policies.  *Id*. at 1095.

The first factor weighs in favor of Bridgestone, a Japanese corporation that is being asked to litigate in a foreign country under a foreign system of justice.  This factor is "not dispositive, [but] the burden on the defendant is of primary concern in determining the reasonableness of personal jurisdiction." *Id*. at 1096 (citing *World Wide Volkswagen*, 444 U.S. at 292).  Although the burden on Bridgestone to litigate

15

in Colorado is significant, this factor should be evaluated in light of the plaintiffs' and

forum's interests in exercising jurisdiction and Bridgestone's contacts with the forum.

*See id.*

The second factor, however, weighs in favor of exercising jurisdiction. "States

have an important interest in providing a forum in which their residents can seek

redress for injuries caused by out-of-state actors." *Id.* Colorado has a strong interest

in helping citizens such as plaintiffs, who are residents of Longmont, Colorado (Compl.

at 2, ¶ 2), obtain relief from a foreign corporation that has purposefully availed itself of

the benefit of sales in Colorado.

The third factor also weighs strongly in favor of exercising jurisdiction. This

inquiry "hinges on whether the Plaintiff may receive convenient and effective relief in

another forum." *Id.* at 1097. Bridgestone's broad denial of connection with the United

States suggests that plaintiffs' only other option would be to litigate in Japan. This

factor weighs heavily in cases "where a Plaintiff's chances of recovery will be greatly

diminished by forcing him to litigate in another forum because of that forum's laws or

because the burden may be so overwhelming as to practically foreclose pursuit of the

lawsuit." *Id.* at 1097. Forcing plaintiffs to litigate in Japan would likely be such an

overwhelming burden. Also, Bridgestone has not shown whether Japanese law might

afford full relief to litigants such as plaintiffs.

The fourth factor "examines whether the forum state is the most efficient place to

litigate the dispute." *Id.* Important considerations include location of witnesses, where

the injury occurred, which forum's substantive law governs, and whether jurisdiction is

16

necessary to prevent piecemeal litigation.  *Id.*  Here, witnesses to the accident are likely to be located in Colorado, although witnesses to issues related to the tire manufacture and design are likely to be located in Japan, and expert witnesses may reside anywhere in the United States or elsewhere.  There is no indication from the record that any forum's substantive law other than Colorado's would apply, the accident having occurred in Colorado.  *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1211 (10th Cir. 2001) (Colorado's choice of law rules dictates that "the law of the state with the most significant relationship with the occurrence and the parties" applies; here, location of the injury and of the alleged negligence was Colorado and Colorado law applied); *Conlin v. Hutcheon*, 560 F. Supp. 934, 935 (D. Colo. 1983) (explaining Colorado's adoption of the *Restatement (Second) of Conflict of Laws* § 145, which lists the place where the injury occurred as the first factor for determining whose law applies in a tort action).  Finally, were plaintiffs forced to proceed against other named defendants in the absence of Bridgestone, piecemeal litigation might occur, as plaintiffs may pursue Bridgestone elsewhere or other defendants may seek indemnity from Bridgestone elsewhere.  Overall, this factor favors the exercise of jurisdiction.

The final factor looks at whether "the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states or foreign nations."  *Id.*  Here, this factor weighs in favor of Bridgestone as a Japanese corporation.  While a possible conflict with a foreign nation's sovereignty is not dispositive, "great care and reserve should be exercised when extending our notions of

17

personal jurisdiction into the international field." *Id.* at 1097-98 (quoting *Asahi*, 480 U.S. at 115).

After examining the five factors, three of which favor the exercise of jurisdiction, the Court determines that exercising personal jurisdiction over Bridgestone, the self-proclaimed "true industry leader in the Americas," does not offend traditional notions of fair play and substantial justice.  Bridgestone has not presented a "compelling case" to defeat plaintiffs' prima facie showing of specific jurisdiction.  *Id.* at 1091.

Because the exercise of specific jurisdiction is proper, there is no need to analyze plaintiffs' arguments related to general jurisdiction.  Additionally, there is also no need to address plaintiffs' arguments that Firestone operates as Bridgestone's agent in Colorado, allowing Firestone's contacts to be imputed to Bridgestone.  Finally, plaintiffs' alternative request for discovery on the issue of jurisdiction is now moot.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Bridgestone Corporation's two Motions to Dismiss for Lack of Personal Jurisdiction (Dkts. ## 22 and 62).

DATED: March 9, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge